TOWNSHIP OF EAST BRUNSWICK, A MUNICIPAL CORPORATION; STANLEY FISCHER, SUSAN TAKACS, CECILIA SALVI, CLAIRE MARESE, AND AUDREY MANTEL, INDIVIDUALLY AND ON BEHALF OF ALL OTHER RESIDENTS OF THE TOWNSHIP OF EAST BRUNSWICK, SIMILARLY SITUATED, PLAINTIFFS, v. MIDDLESEX COUNTY BOARD OF FREEHOLDERS; UNION COUNTY BOARD OF FREEHOLDERS; MORRIS COUNTY BOARD OF FREEHOLDERS; SOMERSET COUNTY BOARD OF FREEHOLDERS; EDGEBORO DISPOSAL, INC., A NEW JERSEY CORPORATION; THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; THE NEW JERSEY BOARD OF PUBLIC UTILITIES; AND JOHN DOE 1–10,000 REPRESENTING THE INDIVIDUAL GARBAGE HAULERS USING THE EDGEBORO LANDFILL, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Middlesex County

Decided December 14, 1987.

*Stephen H. Skoller* for plaintiff Township of East Brunswick (*Lowenstein, Sandler, Kohl, Fisher Boylan,* attorneys).

*Linda Hatt–DuFour* for defendant Middlesex County Board of Freeholders (*Middlesex County Counsel,* attorney).

*Jeremiah O'Dwyer* for defendant Union County Board of Freeholders (*Union County Counsel,* attorney).

*William E. Ozzard* for defendant Somerset County Board of Freeholders (*Somerset County Counsel,* attorney).

*Herbert M. Strulowitz* for defendant Morris County Board of Freeholders (*Morris County Counsel,* attorney).

*Lorraine Teleky–Petrella* for defendant Edgeboro Disposal, Inc., attorney.

*Michael Care* for defendant The New Jersey Department of Environmental Protection (*W. Carey Edwards,* Attorney General of the State of New Jersey, attorney).

BACHMAN, J.S.C.

This is one of a series of cases which have emanated from the garbage crisis facing the State of New Jersey in general, and Central New Jersey in particular. It involves Edgeboro Landfill which has been serving, among others, Middlesex, Somerset, Union and Morris Counties.

The Complaint in this cause of action named as defendants the New Jersey Department of Environmental Protection (DEP) the Board of Public Utilities (BPU) Edgeboro Disposal, Inc. as well as the above numerated counties and various unidentified waste haulers. The plaintiffs are the Township of East Brunswick in which the Edgeboro facility is located and various citizens, taxpayers and residents of that municipality.

The complaint contained various allegations and prayers for relief. The court heard motions to dismiss on August 27, 1987. An order was entered dismissing Counts One and Two of the complaint and Counts Three and Four, in so far as injunctive relief was sought. The latter two counts also sought damages on behalf of the municipality and the individual plaintiffs for nuisance. The denial of that portion of the motion was without prejudice to the defendant's right to renew. It is that motion which is now before the court.

The DEP and BPU move to dismiss the remaining counts of the complaint based upon the immunities provided by the Tort Claims Act. In the alternative, the DEP and BPU seek to transfer this matter to the Appellate Division pursuant to the Single Controversy Doctrine. The counties of Middlesex, Morris, Somerset and Union as well as Edgeboro have joined in the State's motion.

In Count Three, plaintiffs contend that defendants' operation of the landfill constitutes a nuisance in that it has substantially interfered with plaintiffs use and enjoyment of their property. Specifically, it is alleged that due to the increase in the amount of waste being directed to the landfill and the manner in which such waste is being disposed of, there has been a concurrent

increase in truck traffic and, more importantly, in the vapors and odors emanating from the site. Plaintiffs argue that this situation endangers their health and safety and renders their property and homes uncomfortable.

In Count Four, it is contended that defendant counties have failed to make significant efforts to provide in-county garbage facilities. This failure, it is alleged, has permitted the counties to redirect their waste to Edgeboro thus contributing to and aggravating the nuisance conditions presently existing at the landfill.

In determining whether these two counts are actionable under the New Jersey Tort Claims Act, a two-step analysis is required. First, it must be established whether these particular defendants fall within the protection of the Act. And if so, it then must be determined whether the Act provides these defendants with immunity from the type of liability alleged herein.

■ Broadly speaking, the New Jersey Tort Claims Act reestablishes an all-inclusive immunity from tort liability for "public entities" except as otherwise provided by a specific provision therein imposing liability upon them. *Fox v. Township of Parsippany–Troy–Hills,* 199 *N.J.Super.* 82, 87 (App.Div.1985).

*N.J.S.A.* 59:1–3, the definitions section of the Act, states in pertinent part that "Public entity" includes "the State, and any other county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." Moreover, the statute defines "State" as the State and any office, department, division, bureau, board, commission or agency of the State. In interpreting the meaning of these terms, the following analysis is generally applied:

The two definitions, "Public entity" and "State" should be viewed as follows: the former is a greater inclusive grouping based on sovereignty, *i.e.* political subdivision; the second is a lesser included sub-grouping based on administra-

tive subdivisions of the State. "State" then is one of the public entities listed in the former definition. "Public entity is the general term, "State" is a specific. Each of the parts included under the term "Public entity" has had that sovereignty possessed by the state parcelled out to it, and is to that degree independent of the State, and the equal of the State. The administrative parts that are listed in the meaning of State", however, merely share in or are covered by the umbrella of sovereignty which the State has retained, but have no sovereignty of their own. These include offices, departments, divisions, bureaus, boards, commissions and state agencies. *Wade v. N.J. Turnpike Authority*, 132 *N.J.Super.* 92, 97 (Law Div.1975).

*See also English v. Newark Housing Authority*, 138 *N.J.Super.* 425, 429–430 (App.Div.1976).

■ It is beyond question that the BPU, DEP and the various counties in this action fit under the definition of "public entity" and thus are entitled to seek protection under the statute.

*N.J.S.A.* 59:2–3(a) provides that "a public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity." In *Costa v. Josey*, 83 *N.J.* 49, 59 (1980), the New Jersey Supreme Court concluded that:

[T]he exemption contemplated under *N.J.S.A.* 59:2–3(a) concerns the "exercise of judgment or discretion" in making basic policy—the type made at the planning, rather than the operational level of decisionmaking. Moreover, immunity is contingent upon proof that discretion was actually exercised at that level by an official who, faced with alternative approaches, weighed the competing policy considerations and made a conscious choice.

In distinguishing between the "planning" and "operational" levels of decisionmaking, it is generally accepted that the former refers to determinations made by high-level administrators concerning the formation of basic policy and programs while the latter refers to decisions concerning ministerial details made by those who are directed to implement such policies and programs. See *Costa, Supra; Dalehite v. United States*, 346 *U.S.* 15, 73 *S.Ct.* 956, 97 *L.Ed.* 1427 (1953); *In Re Franklin Nat. Bank Sec. Litigation*, 478 *F.Supp.* 210 (E.D.N.Y.1979); *Lyons v. State by Humphrey by Pung*, 366 *N.W.2d* 621 (Minn. App.1985); *People v. Patrick J. Gorman Consultants, Inc.*,

111 *Ill.App.*3d 729, 67 *Ill.Dec.* 540, 444 *N.E.*2d 776 (1982); *Alias Smith & Jones Inc. v. Barnes,* 695 *P.*2d 302 (Colo.App.1984); *Smith v. Lewis,* 669 *S.W.*2d 558 (Mo.App.1983).

■ In this instant case, the complaint alleges, *inter alia,* that the redirection of waste to the Edgeboro landfill by the DEP and BPU has resulted in the creation of a continuing nuisance. Moreover, its contended that the failure of the respective counties to create their own waste disposal facilities has also aggravated the problem. These claims specifically concern high-level decisions which called for the exercise of official judgment and discretion. Indeed, the record is replete with reports, studies, hearings and orders which substantiates that the defendants functioned as policymakers in that they consciously balanced the risks and advantages and exercised their discretion in assuming certain risks to gain particular policy objectives. In short, the actions implicated in the nuisance action reflect basic policymaking decisions which were made at the "planning" level of the administrative process. To the extent that counts Three and Four attack such discretionary decisions, the DEP, BPU and the several defendant counties are entitled to immunity under *N.J.S.A.* 59:2–3.

■ The immunity protection provided by the Tort Claims Act does not, however, extend to Edgeboro Disposal, Inc. Clearly, Edgeboro is a privately owned and operated business and not a "public entity" which exercises governmental functions. Thus, Edgeboro, like any other private entrepreneur, "may readily be held for negligence within the chosen ambit of [its] activity." *N.J.S.A.* 59:1–2; *Fitzgerald v. Palmer,* 47 *N.J.* 106, 109 (1966). Moreover, Edgeboro is not entitled to any derivative immunity under the Act. In *Vanchieri v. N.J. Sports and Exposition,* 104 *N.J.* 80 (1986) the court acknowledged that under certain circumstances independent contractors do share to a limited extent the immunity of public entities with

whom they contract. In its opinion, the court stated that "[w]hen a public entity provides plans and specifications to an independent contractor, the public contractor will not be held liable for work performed in accordance with those plans and specifications." *Id.* at 86.

In this case defendant Edgeboro has not established that any public entity has provided it with plans and specifications as to the "day to day" operation of the landfill which is alleged by the plaintiffs to cause the nuisance problems. While it is true that the DEP and BPU have established a broad regulatory scheme for solid waste management, this scheme, however, does not provide such comprehensive plans and specifications concerning the daily operation and maintenance of the facility. Indeed, *N.J.A.C.* 7:26–2.11 merely sets forth "general operational requirements" for all sanitary landfills. Thus, it is the continuing responsibility of the operators to work out the ministerial details regarding the procedures and methods to employ for complying with these general directives. More importantly, the operators determine the actual manner in which these procedures and methods are to be performed and subsequently carry it out themselves. These "operational" decisions and actions are routine in the ordinary course of business and therefore are not insulated from liability under the Tort Claims Act. *See e.g., Birchwood Lakes Colony Club v. Medford Lakes,* 90 *N.J.* 582 (1982); *Costa v. Josey,* 83 *N.J.* 49 (1980); *Barney's Furniture Warehouse v. Newark,* 62 *N.J.* 456 (1973); *Flodmand v. Institutions and Agencies Dep't.,* 175 *N.J.Super.* 503 (App.Div.1980). Thus, absent evidence of State plans and specifications of the type described, Edgeboro is not entitled to immunity and therefore may be subject to a nuisance action.

In joining the State's motion, Edgeboro contends that any nuisance action must be transferred to the Appellate Divi-

sion to be consolidated with matters already pending there. Broadly speaking, the "Single Controversy" doctrine requires that all claims between parties be presented in a single proceeding where the parties respective rights and liabilities derive from a single transaction or series of related transactions. *The Malaker Corp. v. First Jersey National Bank*, 163 *N.J.Super.* 463 (App.Div.1978). In its decision of August 27, 1987, the court dismissed Counts One and Two upon determining that the Appellate Division had jurisdiction over plaintiffs' claims for injunctive and declaratory relief. That portion of the complaint, in essence, alleged that the actions and inactions of defendants BPU and DEP concerning the landfill were arbitrary and capricious and hence constituted an abuse of statutory power. The surviving portion of the nuisance claim does not focus on state activity but addresses the manner in which the private owners of Edgeboro operated the facility on a daily basis. Clearly, the claims pending in the Appellate Division raise questions of administrative law and procedure and are not of the same tenor as the issues raised in the nuisance action which involve questions of breach of duty and reasonable care. In short, the disposition of the nuisance claim involves an analysis of substantially different factual circumstances which do not concern any final decisions or actions by the State. Thus, the nuisance action against Edgeboro constitutes an independent cause of action which is separately adjudicable from matters currently before the Appellate Court.

Based upon the foregoing analysis, it is the ruling of this court that counts Three and Four are dismissed to the extent that they seek damages for nuisance against defendants DEP, BPU and the various counties. The plaintiffs, however, may maintain a nuisance action against defendant Edgeboro Disposal at the trial court level.

The Attorney General will submit an order in accordance with this opinion.